UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PINNACLE CRUSHING AND CONSTRUCTION LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HARTFORD FIRE INSURANCE COMPANY, et al.,<br><br>Defendants. | CASE NO. C17-1908JLR<br><br>ORDER DENYING MOTION TO DISMISS OR STAY |

## I. INTRODUCTION

Before the court is Defendants Hartford Fire Insurance Company ("Hartford") and Cherokee General Corporation's ("Cherokee") (collectively, "Defendants") motion to dismiss or stay. (MTD (Dkt. # 34).) Plaintiffs United States of America for the Use and Benefit of Pinnacle Crushing and Construction, LLC; Pinnacle Crushing and Construction, LLC (collectively, "Pinnacle"); United States of America for the Use and Benefit of SCI Infrastructure, LLC; and SCI Infrastructure, LLC (collectively, "SCI")

(collectively, "Plaintiffs") oppose the motion. (Pinnacle Resp. (Dkt. # 43); SCI Resp. (Dkt. # 45).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion,[1] the relevant portions of the record, and the applicable law. Being fully advised,[2] the court DENIES the motion for the reasons set forth below.

## II. BACKGROUND

This case arises from Plaintiffs' work on a United States Army Corps of Engineers ("the Corps") construction project. Plaintiffs performed work "for the construction project known as 'USACE-S YTC Repair Selah Airstrip, Yakima WA, W912DW-14-D-1002 0012,' at the United States Army's Yakima Training Center" ("the Project").[3] (Pinnacle Compl. (Dkt. # 1) ¶ 2); *see also SCI Infrastructure, LLC v. Cherokee Gen. Corp.*, No. C17-3181SMJ, Dkt. # 1 ("SCI Compl.") ¶ 2 (E.D. Wash.). "The Project involved demolishing the existing airfield, expanding the airstrip[,] and reconstructing the

---

[1] Defendants filed two reply briefs—one addressing Pinnacle's response, the other addressing SCI's response. (*See* Reply to SCI (Dkt. # 48); Reply to Pinnacle (Dkt. # 49).) The District's Local Civil Rules do not contemplate filing two replies. *See* Local Rules W.D. Wash. LCR 7(b)(3) (stating that the moving party may file "a reply brief in support of the motion"). Although the court considers the replies, Defendants may not file multiple reply briefs in the future without the court's permission. Failure to comply with the court's orders and the applicable Local Civil Rules will result in the court disregarding improperly filed materials and considering appropriate sanctions.

[2] No party requested oral argument (*see* MTD; Pinnacle Resp.; SCI Resp.), and the court determines that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[3] Pinnacle filed suit against Hartford on September 8, 2017. (Pinnacle Compl. at 1.) On October 18, 2017, SCI filed its complaint against Hartford and Cherokee. *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. Plaintiffs filed both cases in the Eastern District of Washington (*see* Pinnacle Compl., SCI Compl.), and the Honorable Salvador Mendoza Jr. later consolidated the cases and transferred the consolidated case to this court (12/14/17 Order (Dkt. # 20); 12/18/17 Order (Dkt. # 22)).

airway and taxiway as well as other incidental work." (Line Decl. (Dkt. # 34-1) ¶ 2.) Cherokee was the prime contractor for the Corps—the owner of the Project. (Pinnacle Compl. ¶ 3); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶ 2. SCI was a subcontractor for Cherokee, and Pinnacle was, in turn, a subcontractor for SCI. (Pinnacle Compl. ¶ 3); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶ 3. Hartford was the "compensated surety and bonding company for Cherokee." (Pinnacle Compl. ¶ 4); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶ 4. Cherokee and Hartford provided a payment bond—Bond No. 52BBCSHH7744 ("the Bond")—to the United States of America. *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶ 5, Ex. A.

On October 11, 2016, Cherokee and SCI entered into a subcontract ("the Cherokee-SCI Subcontract") governing SCI's work on the Project. (Line Decl. ¶ 3, Ex. A ("SCI Sub.") (Dkt. # 35-1) at 1.) The Cherokee-SCI Subcontract "incorporates by reference . . . all relevant and applicable clauses of the Prime Contract [the contract between the Corps and Cherokee], as well as all clauses under the Federal Acquisition Rules ("FARs") required by the Prime Contract." (*Id.*) The parties further agreed that the dispute provisions of the Prime Contract would apply to any disputes arising from the Cherokee-SCI Subcontract. (*Id.* at 3.) Cherokee agreed to "present to the [Corps] . . . all of [SCI's] claims for additional monetary compensation . . . and to further invoke, on behalf of [SCI], those provisions in the Prime Contract for determining disputes." (*Id.*) SCI agreed to be "bound by the procedure and final determinations as specified in any such Disputes clause." (*Id.* at 3-4.)

//

Pinnacle and SCI also entered into a subcontract ("the SCI-Pinnacle Subcontract"). (Line Decl. ¶ 4, Ex. B ("Pinnacle Sub.").) The SCI-Pinnacle Subcontract also contains a disputes provision that calls for Cherokee to "pass through" Pinnacle's claims to the Corps. (*See id.* at 12.) Specifically, the parties agreed to be bound "by the terms of the Main Contract and by any and all procedures and resulting decisions, findings, determinations, or awards made thereunder by the person so authorized in the Main Contract, or by an administrative agency, board, [or] court of competent jurisdiction or arbitration." (*Id.*) Pinnacle further agreed that "it will not take, or will suspend, any other actions"—including Miller Act, 40 U.S.C. § 3131, *et seq.*, claims—"and will pursue no independent litigation with respect thereto, pending final determination of any dispute resolution procedure between" Cherokee and the Corps. (*Id.*)

On June 7, 2017, the Corps terminated Cherokee's contract and withheld certain payments. (Line Decl. ¶ 7, Ex. C ("Letter")). The Corps contends that Cherokee "fail[ed] to make progress" on the Project, "fail[ed] to provide and adhere to schedules," and "fail[ed] to provide adequate quality control." (*Id.* at 1.) Cherokee contends that it "encountered differing site conditions that delayed the work and increased the cost of performance." (Line Decl. ¶ 5.) Cherokee disputes the Corps' actions and submitted a claim pursuant to the Prime Contract. (*Id.* ¶ 8.) Plaintiffs also provided Cherokee with their claims, which Cherokee passed to the Corps. (*Id.* ¶ 9.)

SCI and Pinnacle also brought suit under the Miller Act. (Pinnacle Compl. ¶ 5); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶¶ IV.1-3. Plaintiffs assert that they

performed their obligations under the subcontracts but Cherokee has not paid them. (Pinnacle Compl. ¶ 11); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶¶ 10-14. Plaintiffs contend that Cherokee owes Pinnacle $1,057,597.95[4] and SCI $2,595,116.96. (Pinnacle Compl. ¶ 14); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶ 14. Plaintiffs each bring a claim to recover those amounts on the Bond.[5] (Pinnacle Compl. ¶¶ 15-17); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶¶ IV.1-3. SCI additionally brings claims for breach of contract; violation of the Prompt Payment Act, 31 U.S.C. § 3901, *et seq.*; unjust enrichment and quantum meruit; promissory estoppel; and negligent misrepresentation. *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶¶ V-IX.

On February 9, 2018, Defendants moved to dismiss or stay the case.[6] (*See* MTD.) Defendants first argue that Plaintiffs' claims against Hartford are "entirely contingent" on Cherokee's liability, and Hartford is therefore not liable because "the damages SCI and Pinnacle have alleged are the responsibility of [the Corps] and are being resolved through the Contract Disputes Act process."[7] (*Id.* at 7.) Defendants further argue that Plaintiffs'

---

[4] In its response to the motion to stay discovery, Pinnacle stated that Cherokee owes it $972,240.38. (Pinnacle MTS Resp. (Dkt. # 36) at 3.)

[5] Pinnacle brings suit only against Hartford, while SCI brings suit against both Hartford and Cherokee. (Pinnacle Compl. ¶¶ 15-17); *SCI Infrastructure*, No. C17-3181SMJ, SCI Compl. ¶¶ IV.1-3.

[6] Defendants also moved to stay discovery while the present motion is before the court. (MTS (Dkt. # 33).) The court denied that motion on April 11, 2018. (*See* 4/11/18 Min. Entry (Dkt. # 50).)

[7] The Contract Disputes Act ("CDA"), 41 U.S.C. § 602(a), *et seq.*, "establishes rules governing disputes arising out of certain Government contracts." *Nat'l Park Hosp. Ass'n v.*

claims are unripe—and the court therefore lacks subject matter jurisdiction—because "the parties are in the process of pursuing their claim[s] administratively using the subcontracts' 'pass-through' mechanisms."[8] (*Id.* at 7-8.) In the alternative, Defendants request that the court stay the case pending resolution of the administrative process. (*Id.* at 10-17.)

Plaintiffs oppose the motion, contending that any contractual provisions requiring them to wait before pursuing their Miller Act claims are invalid waivers of their rights under the Act. (*See* Pinnacle Resp. at 7-8; SCI Resp. at 2, 15.) They also argue that a stay would be prejudicial because "the upstream dispute resolution process will possibly take years to complete." (SCI Resp. at 17; *see also* Pinnacle Resp. at 3, 6.) The court now addresses Defendants' motion.

### III.   ANALYSIS

**A.   Ripeness**

Defendants bring their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which concerns the court's subject matter jurisdiction. (*See* MTD at 8); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) ("An objection that a federal

---

*Dep't of Interior*, 538 U.S. 803, 805 (2003). "The statute provides that these disputes first be submitted to an agency's contracting officer" and that "[a] Government contractor dissatisfied with the contracting officer's decision may seek review either from the United States Court of Federal Claims or from an administrative board in the agency." *Id.* The "decision may then be appealed to the United States Court of Appeals for the Federal Circuit." *Id.*

[8] A pass-through claim is a claim in which "the prime contractor certifies the claim of the subcontractor and sponsors that claim under its own name." *M.K. Ferguson Co. v. United States*, No. 12-57 C, 2016 WL 1551650, at *1 (Fed. Cl. Apr. 14, 2016).

court lacks subject matter jurisdiction may be raised at any time."); *Salois v. Medifast, Inc.*, No. 17cv1810-GPC (NLS), 2018 WL 108346, at *3 (S.D. Cal. Feb. 28, 2018) (citing *Gemtel Corp. v. Cmty. Redevelopment Agency*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994)) (stating that Rule 12(b)(1) is the proper procedural vehicle for raising a ripeness challenge). They contend that Plaintiffs' claims are unripe because they agreed to pursue alternative dispute processes in the respective subcontracts and those processes have not yet been resolved. (MTD at 7-9.)

A dispute is constitutionally ripe if it "presents concrete legal issues, presented in [an] actual case[]." *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (internal quotation marks and first alteration omitted). "Constitutional ripeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong." *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (internal quotation marks omitted). That prong requires a plaintiff to demonstrate "'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (stating that the burden of establishing ripeness rests upon the party asserting the claim). A dispute is merely an "abstraction" when "the supposed injury has not materialized and may never materialize." *Mont. Envtl. Info. Ctr.*, 766 F.3d at 1190.

Plaintiffs' claims are constitutionally ripe because Plaintiffs allege a specific injury in fact—that they are owed money for completed work on the Project—and seek

recovery against the surety bond. (*See, e.g.*, Pinnacle Compl. ¶¶ 10-17); *SCI Infrastructure, LLC*, No. C17-3181SMJ, SCI Compl. ¶¶ 10-14, IV.1-3. The required length of time between Plaintiffs' completion of work and provision of materials has also passed. *See Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1205 (9th Cir. 2002) ("[A] subcontractor's right of recovery on a Miller Act payment bond is conditioned on the passage of time from completion of work or provision of materials.") The case therefore presents concrete legal issues that are ripe for review.[9] *See Bishop Paiute Tribe*, 863 F.3d at 1153.

Furthermore, the contractual procedure Defendants point to as rendering Plaintiffs' claims unripe do not waive Plaintiffs' Miller Act rights. The Miller Act authorizes a subcontractor to bring suit against a general contractor's surety bond if the subcontractor is not paid within 90 days of completing its work. *See* 40 U.S.C. § 3133(b)(1); *Weststar Eng'g*, 290 F.3d at 1205 ("[A] subcontractor's right of recovery on a Miller Act payment

---

[9] Defendants also cite authority regarding prudential ripeness considerations. (MTD at 8); *see Nat'l Park Hospitality*, 538 U.S. at 808 (stating that the ripeness doctrine comprises both constitutional and prudential considerations). Prudential ripeness typically encompasses two considerations: (1) fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Abbotts Labs. v. Gardner*, 387 U.S. 136, 149 (1967). But, in cases involving contractual disputes, a court applies "the traditional ripeness standard" and evaluates "whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (internal quotation marks omitted); *see also Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015) (stating that the Ninth Circuit does not "analyze the prudential component of the ripeness inquiry in private contract litigation" or in construing settlement agreements). The court concludes that there is such a controversy here for the reasons stated above. However, even if the *Abbott* test applies, *see In re Coleman*, 560 F.3d 1000, 1007 (9th Cir. 2009) (concluding that the *Abbott* test applies in bankruptcy cases), the issues here are fit for judicial decision, and there would be hardship to Plaintiffs from withholding the court's consideration.

bond is conditioned on the passage of time from completion of work or provision of materials."). Courts construe the Miller Act liberally to protect subcontractors, and any waiver of Miller Act rights must be clear and explicit. *See Weststar Eng'g*, 290 F.3d at 1205, 1208. The Miller Act also provides that a waiver must be in writing, signed by the person whose right is waived, and executed after that person has furnished labor or material used in performing the contract. *See* 40 U.S.C. § 3133(c).

The disputes provision in the Cherokee-SCI Subcontract states that

> [SCI] agrees to be bound to [Cherokee] to the same extent that [Cherokee] is bound to [the Corps] both by the terms of the Prime Contract and by any and all decisions or determinations made as authorized in the Prime Contract. In the event the Prime Contract contains a 'Disputes' clause, where claims may be resolved under an administrative procedure or by arbitration, then as to any claims of [SCI] for acts or omissions of the [Corps] or [the Corps'] representative which are not disposed of by mutual agreement, Contractor agrees to present to the [Corps] . . . all of [SCI's] claims . . . and to further invoke, on behalf of [SCI], those provisions in the Prime Contract for determining disputes. . . . [SCI] agrees to be bound by the procedure and final determinations as specified in any such Disputes clause.

(SCI Sub. at 3.)

The contractual provision is not sufficiently clear or explicit to constitute a valid waiver of SCI's Miller Act rights.[10] *See United States v. McCarthy Building Cos., Inc.*, No. 13-cv-03699-HRL, 2015 WL 4198794, at *2-3 (N.D. Cal. July 10, 2015) (concluding that the contractual provisions did not clearly and explicitly waive Miller Act rights); *cf. United States v. Dick/Morganti*, No. C 07-02564 CRB, 2007 WL 3231717, at *2 (N.D. Cal. Oct. 30, 2007) ("[W]here the unambiguous language of a subcontract provides for a

---

[10] The court notes that the Prime Contract is not in the record. (*See* Dkt.) Accordingly, the court cannot say for certain what dispute process the Prime Contract requires, which factors in the court's analysis of whether dismissal or a stay is warranted.

stay, enforcing that language does not contravene the purposes of the Miller Act."). In an analogous scenario, the Ninth Circuit held that a "pay when and if paid" clause did not waive a subcontractor's Miller Act right to recover on a payment bond because the clause did "not identify any rights that [the subcontractor] may have under the Miller Act payment bond . . . as a predicate for releasing them." *Weststar Eng'g*, 290 F.3d at 1209. Because the clause was "not even framed as a release or waiver of claims," the purported waiver was insufficiently "clear and explicit." *Id.* The same is true for Cherokee and SCI's subcontract because the disputes clause contains no explicit statement that SCI is waiving Miller Act rights. (*See* SCI Sub. at 3.) The court thus concludes that the contractual provisions do not render SCI's claims unripe.

Nor did Pinnacle waive its right to proceed with a Miller Act claim at this time. The SCI-Pinnacle Subcontract provides that Pinnacle:

> agrees to be bound by the procedure and final determinations as specified in the Main Contract[11] and agrees that it will not take, or will suspend, any other action or actions (including but not limited to any arbitration(s) or action(s) commenced pursuant to the Federal Miller Act . . .) with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination of any dispute resolution procedure.

(Pinnacle Sub. at 13 (footnote added).) Thus, Defendants are correct that the SCI-Pinnacle Subcontract explicitly purports to waive Pinnacle's Miller Act claim during any dispute resolution between SCI and Cherokee by binding Pinnacle not only to the Prime Contract's procedures but to any "final determination" thereunder. (*Id.*); *see also*

---

[11] The Main Contract is the same contract referred to as the Prime Contract in the Cherokee-SCI Subcontract. (*Compare* SCI Sub., *with* Pinnacle Sub.)

*Weststar Eng'g*, 290 F.3d at 1209. However, a subcontractor can waive its Miller Act rights only after furnishing labor or material used in performing the contract. *See* 40 U.S.C. § 3133(c); *see also Am. Constr. & Envtl. Servs. v. Total Team Constr. Servs., Inc.*, No. 1:14-cv-00087-LJO-GSA, 2014 WL 1664827, at *6 (E.D. Cal. Apr. 24, 2014) (finding that a subcontractor had not waived its Miller Act rights because the "subcontract identified by both parties was secured before [the subcontractor] performed its obligations"); *but see Dick/Morganti*, 2007 WL 3231717, at *3 (addressing 40 U.S.C. § 3133(c)'s requirements in the context of a stay rather than dismissal). Pinnacle executed the subcontract before it provided labor or materials, and the waiver is therefore invalid.[12] (Ontiveros Decl. (Dkt. # 44) ¶ 5 ("After furnishing the labor and materials used in the Project, Pinnacle did not sign any written waiver of its right to bring its Miller Act Complaint.").)

For these reasons, the court denies Defendants' motion to dismiss on ripeness grounds.[13]

**B.    Stay of Proceedings**

As an alternative to dismissal, Defendants request a stay, arguing that Plaintiffs agreed to wait to pursue Miller Act remedies until any disputes between Cherokee and

---

[12] SCI also contends that it did not waive any rights after commencing work and furnishing labor. (SCI Resp. at 15.) SCI's complaint does not, however, state when it commenced work on the Project. *See generally SCI Infrastructure, LLC*, No. C17-3181SMJ, SCI Compl.

[13] Because the court concludes that the respective subcontracts did not waive Plaintiffs' Miller Act rights, Defendants' argument that Hartford is not liable because the claims are being resolved through the CDA process is misplaced. (*See* MTD at 7.)

the Corps resolve. (MTD at 10-16.) Whether a stay is appropriate likewise turns on the waiver of Miller Act rights under the respective subcontracts. *See Dick/Morganti*, 2007 WL 3231717, at *3; *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (A court has the power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and must "weigh competing interests."). Neither SCI nor Pinnacle validly waived their right to pursue a Miller Act claim, and the court accordingly denies Defendants' motion for a stay.

Because the SCI-Pinnacle Subcontract expressly references suspending Miller Act claims (SCI-Pinnacle Sub. at 13), however, the court further addresses why that contractual provision does not warrant a stay. In *United States v. Dick/Morganti*, the District Court for the Northern District of California issued a stay of a subcontractor's Miller Act claims after concluding that "the temporary stay at issue does not effect a 'waiver' of the Subcontractors' Miller Act rights within the meaning of [40 U.S.C.] § 3133(c)." 2007 WL 3231717, at *3. Similarly, the court in *Kingston Environmental Services, Inc. v. David Boland, Inc.* stayed Miller Act claims because the subcontractor "expressly agreed to stay any civil action against [the contractor] and [the surety] pending resolution of the contractual remedial procedure relating to claims for which the [Corps] may be responsible." No. 16-00205 DKW-RLP, 2017 WL 3763519, at *3 (D. Haw. Aug. 30, 2017). Of key importance, however, the agreement there left the subcontractor's Miller Act "remedies . . . intact pending exhaustion of [the] contractual remedial procedure." *Id.* at *8.

These cases are distinguishable. *See Unlimited Envtl., Inc. v. Century Surety Co.*,

No. 12-04278 MMM (SHx), 2012 WL 12882121, at *9 (C.D. Cal. Oct. 29, 2012). Although agreeing to a stay may not amount to a waiver of Miller Act rights, "[t]here is no indication that the subcontract at issue in *Dick/Morganti* provided that the owner's decision on a subcontractor's compensation request would be 'final and binding.'" *Id.* But the subcontract here provides for Pinnacle "to be bound by the procedure and final determinations as specified in the Main Contract" (SCI-Pinnacle Sub. at 13), "indicating that staying the litigation in favor of the [CDA] proceedings may result in [Pinnacle] losing its ability to return to court to enforce its rights under the Miller Act," *id.*; *see also Kitchens To Go v. John C. Grimberg Co., Inc.*, 283 F. Supp. 3d 476, 486 (E.D. Va. 2017) (declining to stay a case pending the outcome of dispute resolution proceedings between a prime contractor and the government because "the provision was executed before the Subcontractor provided work on the federal project"). The provision therefore purports to waive Pinnacle's right to sue under the Miller Act—not to waive the timing of bringing such a suit. (*See* Pinnacle Sub. at 13; SCI Sub. at 3); *Found. Fence, Inc. v. Kiewit Pac. Co.*, No. 09cv2062 DMS (JMA), 2010 WL 4024877, at *2 (S.D. Cal. Oct. 13, 2010) (concluding that similar contractual provisions "operate as an implied waiver of Plaintiff's [Miller Act] claims"); *cf. Dick/Morganti*, 2007 WL 3231717, at *3. Thus, the court denies Defendants' motion even though the SCI-Pinnacle Subcontract contemplates a stay.

The court recognizes that Cherokee may suffer some degree of prejudice from pursuing its claim against the Corps at the same time that Plaintiffs pursue relief from Cherokee. (*See* Reply to SCI at 12 (stating that Cherokee "will be forced to litigate in

two forums[] and may be forced to reconcile the inconsistent positions of its subcontractors").) Even though the disputes will undoubtedly result in some duplication, "[t]he risk of inconsistent results between that process and this litigation is a risk that the prime contractor must bear—transferring the risk of nonpayment for work performed from the subcontractor to the prime contractor is one of the purposes of the Miller Act." *Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 759-60 (D. Md. 2016). In addition, staying Plaintiffs' claims—particularly where the respective subcontracts purport to bind Plaintiffs to the outcome between Cherokee and the Corps—would also be prejudicial. The court therefore denies the motion to stay.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Defendants' motion (Dkt. # 34).

Dated this 20th day of April, 2018.

JAMES L. ROBART
United States District Judge